

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

No. PD-0670-07

CLARK DEWAYNE MAYS, Appellant

v.

THE STATE OF TEXAS

On Discretionary Review of Case 06-06-00075-CR
of the Sixth Court of Appeals,
Lamar County

*WOMACK, J., delivered the opinion of the Court, in which KELLER, P.J., and PRICE, KEASLER, HERVEY, and COCHRAN, JJ., joined. HOLCOMB, J., filed a dissenting opinion, in which MEYERS and JOHNSON, JJ., joined.*

The appellant, during voir dire in a murder trial, sought to raise the subject of diminished capacity as it affects a defendant's culpable mental state at the time of the offense. The trial court ruled that it would exclude any evidence of the appellant's diminished capacity and invited the appellant to proffer evidence. The State here raises the issue of whether the appellant's proffer of

evidence was sufficient to preserve that ruling for appeal. Holding that it was not sufficient, we shall reverse the judgment of the Court of Appeals.

Trial Proceedings

The appellant was charged with capital murder;[1] the State chose not to seek the death penalty. The case proceeded to trial before a jury. During voir dire, the appellant made the following statement: "The law in Texas is that we can look at [defendants'] history, their medical history, their psychological history, their psychiatric history, and we can look at those factors to determine their state of mind." The prosecution responded, "Your Honor, may we approach?" The judge excused the jury from the courtroom. There followed a discussion wherein the trial judge considered the admissibility of mental-impairment evidence.

At the outset of the discussion, the trial court ruled:

> After reading the *Jackson* case, it appears to me that there is no defense of diminished capacity. There is no need for this type of evidence of diminished capacity for the purposes of sentencing because there is no issue of sentencing, there is only an issue of guilt or innocence, so I've ruled that I will not hear any evidence of diminished capacity. [Defense Counsel] asked for an opportunity to make a record and I'm glad to give him that opportunity. You may proceed.

Defense counsel proceeded to argue that, although *Jackson v. State*[2] rejected diminished capacity as an affirmative defense in Texas, it recognized the relevance and admissibility of evidence of mental impairment to "show that the defendant lacked the capacity, if you will, to form the specific intent or the intent element of murder." He then stated: "[T]he evidence in this case, were we allowed to present it, would show that because of mental and medical impairment,

---

[1] *See* PENAL CODE § 19.03(a)(2).

[2] 160 S.W.3d 568 (Tex. Cr. App. 2005).

the defendant lacked, at the time of the alleged commission of this crime, the ability to form the requisites of the mental state required of intentional and knowing." He also outlined the applicable Texas law that he believed rendered the evidence admissible.

Defense counsel reviewed with the court each of a series of slides he had prepared to show and discuss with the jury panel during voir dire. For instance, Defendant's Exhibit 1 (mistakenly marked in the record as State's Exhibit 1) said:

> CONDITION OF THE MIND: You are instructed that you may consider all relevant facts and circumstances surrounding the killing, if any, and the previous relationship existing between the accused and the deceased, if any, **together with all relevant facts and circumstances going to show the condition of the mind** of the accused at the time of the offense, if any.

Defense counsel summarized his planned discussion with the jury panel, with regard to this slide, as follows:

> [W]e would have voir dired the jury as it relates to the condition of the mind of the accused at the time of the offense. We would have asked questions concerning Article 38.36 as it relates to relevant facts and circumstances going to show the condition of the mind.[3]

The subjects of the remaining slides and counsel's summary of them were similarly confined to Texas law regarding mental states and lesser-included offenses, as well as general statements regarding the questions counsel anticipated asking the panel. Counsel offered the slides as exhibits, and the court admitted them for the record.

Defense counsel further objected to the ruling against using the evidence for voir dire. The trial judge affirmed his ruling and reiterated his understanding that *Jackson* allowed

---

[3] "In all prosecutions for murder, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense." CODE CRIM. PROC. art. 38.36(a).

diminished-capacity evidence only at punishment, not at the guilt phase. Because punishment

was not at issue in this case, he said that the evidence would not be admissible. He also excluded

the evidence because of prejudice, irrelevance, and confusion to the jury. Defense counsel argued

these points and finally stated:

> Judge, my position is that the blanket exclusion of evidence of mental impairment in the guilt/innocence phase of this trial to show that as a matter of evidence the defendant lacked the ability or capacity, if you will, to form either an intentional or knowing states [*sic*] of mind as culpable mental states for the offense of murder is not the correct statement of the law.
>
> At this point in time, if we can take that issue up on appeal, without having considered waiving the appeal on the point, we would be of the opinion that if you consented to that, we would enter a plea of guilty to the offense of capital murder in this case. I'm saying that with the reservation that because I have been told that no evidence whatsoever under any circumstances would be admissible as it applies to that issue, that I might not and would not put on any record as to the defendant's past mental health history other than I would offer into evidence – well, I just – at this point that's my position.
>
> Now, if we are not willing to go on the record from the court's perspective and say that it just depends on what evidence I heard from whatever mental health expert that you presented, I need to go ahead and bring my mental health expert down and make my record. But if the court's of the opinion, as I understand it as a blanket ruling, that no matter what that evidence said, then I think we have to get into the probative prejudicial point of it because I don't want to waive an appellate point in regards to that aspect of it. But if the court's position is that regardless of the prejudicial element of it, that Texas law does not allow the introduction of evidence of mental impairment in the guilt-innocence phase to show the defendant lacked the capacity to form the necessary mens rea of intentionally or knowingly, I'm willing to proceed forward with the court's permission to appeal that particular point.

The trial judge agreed to certify the appeal[4] and accept the appellant's guilty plea.

The State asked to make an offer of proof from its expert witness, to counter the

defendant's expert.

---

[4] *See* R. App. P. 25.2(a)(2), 66 Tex. B.J. 167 (Tex. Cr. App. 2003, amended 2007).

[PROSECUTOR]: I thought that [Defense Counsel] said that he was going to do an offer of proof with an expert.

[DEFENSE COUNSEL]: No, he indicated that he would not – as I heard you, judge, not fall back on the probative prejudice argument, and it was a blanket ruling that such evidence was inadmissible. That's how I understood you to say it.

[TRIAL COURT]: That's the way I meant it.

[PROSECUTOR]: In that case, we don't need to do that.

[TRIAL COURT]: It's not necessary to put on any evidence of mental capacity. It's all presumed in the defendant's favor in an appeal of this type.

The appellant pleaded guilty, and his sentence was set automatically at life imprisonment.[5] He appealed.

Court of Appeals Decision

The issue on direct appeal centered on whether the evidence would have been admissible at the guilt phase of the trial and, therefore, whether the trial court erred in excluding it.[6] As the trial court had done, the Court of Appeals analyzed the question under *Jackson*. The Court said that, although *Jackson* made plain that Texas jurisprudence does not include an affirmative defense of diminished capacity, it "does, however, recognize something very closely akin to it, …

---

[5] *See* Act of June 16, 1991, 72nd Leg., R.S., ch. 652, § 9, 1991 Tex. Gen. Laws 2394, 2395 (amended 2005) (current version at CODE CRIM. PROC. art. 37.071, § 1). "If a defendant is found guilty in a capital felony case in which the state does not seek the death penalty, the judge shall sentence the defendant to life imprisonment."

[6] The Court of Appeals summarized the sole issue as "whether the defense may present evidence at the guilt/innocence phase of the trial to show that the defendant is afflicted with mental or physical impairments or abnormalities which bring into question whether he possessed the required state of mind at the time of the offense; in other words, whether a defendant's state of mind is such that it decreases his ability to formulate or possess the intent to commit a crime of the nature with which he is charged." *Mays v. State*, 223 S.W.3d 651, 653 (Tex. App.—Texarkana 2007).

this being 'simply a failure-of-proof defense in which the defendant claims that the State failed to prove that the defendant had the required state of mind at the time of the offense.'"[7]

The Court of Appeals found the appellant's proffer to have fallen within the ambit of the *Jackson* diminished-capacity doctrine.[8] The Court recognized that "there was no showing of the nature of the evidence which was to be produced."[9] But it looked to the appellant's stated goal for offering the evidence, which "was to show that he would have explored relevant facts and circumstances going to show the condition of his mind at the time of the killing and to apply it to the lesser included offense of negligent homicide."[10] The Court determined this to be a permissible purpose–and therefore the evidence to be admissible at the guilt phase of the trial–under *Jackson*, and it concluded that the trial court had abused its discretion in excluding the evidence.[11]

The Court ascribed to the trial court's ruling not only the fact that "no evidence was presented from which [it could] determine whether the trial court's erroneous ruling substantially affected Mays'[s] substantial rights," but also the appellant's guilty plea itself.[12] Because it determined the erroneous ruling to have necessarily contributed to the conviction, the Court reversed the judgment and remanded the case to the trial court.[13] The State petitioned for review.

---

[7] *Mays*, 223 S.W.3d, at 654.

[8] *Ibid.*

[9] *Ibid.*

[10] *Ibid.*

[11] *Id.*, at 654-55.

[12] *Id.*, at 655.

[13] *Ibid.*

Our Review

In this court, the State's first ground is whether the appellant failed to preserve error for review. Before we reach the State's ground on its merits, we address the appellant's contention that the preservation issue is not properly before this court.

The appellant argues that the State raises the issue here only for the first time and that the Court of Appeals did not render a decision, either explicit or implicit, on procedural default. Because this court's jurisdiction is limited to reviewing "decisions" of the courts of appeals, he says, we have no jurisdiction to review the issue in this case. We disagree.

This court has said, "Preservation of error is a systemic requirement that a first-level appellate court should ordinarily review on its own motion."[14] Precisely for this reason, in *Haley* we found a procedural-default question, raised by the State for the first time in its petition for discretionary review, to be properly before this court, and in so deciding, reached the merits of the issue.[15] Moreover, here there is no reason to believe that the Court of Appeals deviated from ordinary procedure. Although neither party raised the issue in the Court of Appeals, it was incumbent upon the Court itself to take up error preservation as a threshold issue. Implicit in the Court's review on the merits was a decision on procedural default, which is therefore properly before this court. Accordingly, we now turn to the question of whether the appellant preserved error.

---

[14] *Jones v. State*, 942 S.W.2d 1, 2 n.1 (Tex. Cr. App. 1997); *accord Archie v. State*, 221 S.W.3d 695, 698 (Tex. Cr. App. 2007); *Haley v. State*, 173 S.W.3d 510, 515 (Tex. Cr. App. 2005).

[15] 173 S.W.3d, at 515-17.

In order to preserve error regarding a trial court's decision to exclude evidence, the complaining party must comply with Rule of Evidence 103 by making an "offer of proof" which sets forth the substance of the proffered evidence.[16] Rule 103(a)(2) provides: "Error may not be predicated upon a ruling which … excludes evidence unless a substantial right of the party is affected, and … the substance of the evidence was made known to the court by offer, or was apparent from the context within which questions were asked." The offer of proof may consist of a concise statement by counsel, or it may be in question-and-answer form.[17] If in the form of a statement, the proffer "must include a reasonably specific summary of the evidence offered and must state the relevance of the evidence unless the relevance is apparent, so that the court can determine whether the evidence is relevant and admissible."[18]

"The primary purpose of an offer of proof is to enable an appellate court to determine whether the exclusion was erroneous and harmful. A secondary purpose is to permit the trial judge to reconsider his ruling in light of the actual evidence."[19]

This court's opinion in *Warner* is instructive, as it was predicated on a similar set of circumstances. Warner, in a hearing before voir dire on the State's motion in limine, objected to a portion of the motion requesting that the defendant not discuss in front of the jury any evidence concerning his counseling or rehabilitation for a stress disorder.[20] The defendant told the trial

---

[16] R. EVID. 103(a)(2).

[17] *Warner v. State*, 969 S.W.2d 1, 2 (Tex. Cr. App. 1998).

[18] *Ibid.*

[19] STEVEN GOODE, OLIN GUY WELLBORN III & M. MICHAEL SHARLOT, 1 TEXAS PRACTICE – GUIDE TO THE TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL § 103.3 (1993).

[20] *Warner*, 969 S.W.2d, at 1.

court he intended to adduce evidence at the guilt phase that he was a Vietnam War veteran who suffered from post-traumatic stress disorder (PTSD), and that he had received counseling for the disorder.[21] He further contended that the evidence was admissible to prove that he lacked the specific intent to commit the charged offenses.[22] Warner "did not, however, define 'post-traumatic stress disorder' for the court or explain how he intended to prove that he suffered from the disorder. [He] also did not explain how evidence of PTSD would be relevant to the question of specific intent."[23] The trial court granted the State's motion and found the evidence to be admissible only at the punishment phase of the trial.[24] Warner did not offer the evidence of PTSD at the guilt phase and was found guilty by a jury.[25]

On direct appeal, Warner argued that the trial court erred in excluding the evidence from the guilt phase. The Third Court of Appeals affirmed. This court initially granted Warner's petition for discretionary review on the same question, but after determining from the record that he had not preserved the error for review, we dismissed his petition as improvidently granted. We concluded that he had not made an adequate offer of proof, either during the hearing on the motion or at the guilt phase.[26]

There can be no doubt that the trial judge in the instant case intended his ruling excluding all evidence of the appellant's diminished capacity to apply, not simply for purposes of voir dire,

---

[21] *Ibid.*

[22] *Ibid.*

[23] *Id.*, at 1-2.

[24] *Id.*, at 2.

[25] *Ibid.*

[26] *Ibid.*

but to the entire guilt phase of the trial. In order to preserve error, the appellant therefore was obliged to make an offer of proof that extended beyond the anticipated questions to, and topics of discussion with, potential jurors during voir dire. He was required to proffer, with some degree of specificity, the substantive evidence he intended to present, during the guilt phase, of the appellant's mental impairments and their impact on his mental state at the time of the offense. This he failed to do.

The appellant's proffer of his slides and the questions he would have posed to the jury in voir dire provide us with just that–the substance of his anticipated dialogue with the jury panel. The record reveals that the appellant proffered nothing that rises to the level contemplated in our Rules of Evidence and this court's precedent. The only statement on the record that might even be considered to approach an adequate offer of proof was his statement that, "[T]he evidence in this case, were we allowed to present it, would show that because of mental and medical impairment, the defendant lacked, at the time of the alleged commission of this crime, the ability to form the requisites of the mental state required of intentional and knowing." But as is evident from *Warner*, this sort of summary, in the most general and cursory terms, without any of the meat of the actual evidence, will not suffice to preserve error. The appellant's counsel himself admitted, during the course of the discussion, "I would say that how could we know if that evidence would be more prejudicial than probative when we haven't even had a chance to see what that evidence is."

This is not a case in which the trial judge afforded the appellant no opportunity to make a proffer. On the contrary, the appellant's counsel had every occasion to make a proper offer of proof. We can see from the excerpts of the record above, however, that both the trial judge and

the appellant's counsel were mistaken as to the need for the substance of the proffer which the law requires. The record reflects that trial counsel was prepared to "bring [his] mental health expert down and make [his] record" of the appellant's "past mental health history" had the ruling been more limited in scope. But the appellant's counsel clearly believed that the trial judge's "blanket ruling" excluding evidence of mental impairment from the guilt phase shielded him from the necessity of proffering evidence of the appellant's mental impairment. This is simply incorrect. That the trial judge sanctioned this mistaken belief by agreeing that such a proffer was unnecessary, does not relieve the appellant from his burden. It was the responsibility of the appellant to ensure that the substance of the evidence was placed into the record, and he failed to do so.

Because the appellant failed to make a proper offer of proof, we hold that he did not preserve his complaint for appeal. We reverse the judgment of the Court of Appeals and affirm the judgment of the trial court.[27]

Delivered April 22, 2009.
Publish.

---

[27] We do not reach the second ground of which we granted review: "Is error in the trial court's ruling during voir dire that it will not admit diminished capacity evidence at guilt-innocence automatically harmful when the appellant changes his plea to guilty as a result of the ruling?"