

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| MICHAEL JAMES SPITZER, | § | No. 08-22-00059-CR |
| Appellant, | § | Appeal from the |
| v. | § | 394th Judicial District Court |
| THE STATE OF TEXAS, | § | of Brewster County, Texas |
| Appellee. | § | (TC# CR04955) |

## <u>MEMORANDUM OPINION</u>

A jury convicted Appellant Michael James Spitzer of continuous sexual abuse of a child. Appellant appeals his convictions in two issues, arguing that (1) the trial court abused its discretion by allowing a sexual-assault nurse examiner (SANE) to testify as an expert witness, and (2) the evidence is insufficient to support his conviction. For the following reasons, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Initial events

The victim in this case, Child, was ten years old at the time of trial.[1] In April 2018, Child's biological mother placed Child and her younger brother in the custody of Appellant and his ex-

---

[1] In order to protect the victim's identity, we refer to her as "Child" in place of her true name. *See* TEX. R. APP. P. 9.10.

wife, Jessica Galindo (or Spitzer), who became the children's guardians. Child was six years old, and her brother was two years old when they were placed with Appellant and Galindo while they were living in Marfa, Texas. In October 2018, Appellant, Galindo, Child, and her brother moved from Marfa to Marathon, Texas.

One night in March 2019, Galindo observed Child playing with her brother's penis while they were bathing together. Concerned about her behavior, Galindo went to Child's school and met with her teacher on March 19, 2019. According to testimony from Child's teacher, Galindo told her during the meeting that Child occasionally exhibited strange behaviors, including seeking attention from males, "humping" and "grinding" while she was sitting on other people's laps, and possibly being sexually inappropriate with boys her age. Child's teacher made a call to Child Protective Services (CPS) regarding Child's unusual sexual behavior. On March 21, 2019, CPS Worker Jessie Almance-Molinar went to Galindo's house and spoke to Child, who told Almance-Molinar that Appellant "touches [her] privates" and "was putting in his privates into her privates." After Almance-Molinar met with Child, she confronted Appellant with these allegations, and he became angry and said "this is a lot of B.S. . . . [and] stormed out of the house."[2]

On March 25, 2019, Galindo took Child to the hospital for a SANE examination performed by Bianca Barrientos, a SANE nurse. During the examination, Child told Barrientos that Appellant had touched her vaginal area, rectum, and anus, and he had penetrated her vagina and anus with his penis. A physical examination of Child's vagina showed a "notch" in her hymen and a scar on the lower portion of the vaginal entrance, which, based on her training and experience and Child's

---

[2] Almance-Molinar testified as an outcry witness pursuant to TEX. CODE CRIM. PROC. ANN. art. 38.072. Appellant does not challenge the designation of Almance-Molinar as an outcry witness on appeal.

allegations, Barrientos opined could be consistent with penile penetration through sexual assault. Following a law enforcement investigation, Appellant was arrested for sexually abusing Child.

**B. Child's trial testimony**

At trial, Child testified that she and her brother lived with Appellant (whom she called "Grandpa") and Galindo in Marathon and Marfa. Child related that while she lived with Appellant in both places, he did "bad things" to her. When asked what she meant by "bad things," Child stated that Appellant "would make . . . [her] touch his . . . front part" by "mak[ing her] pull it front and back," causing "[w]hite stuff" to come out of it. Appellant also "[p]ut it in [her] private part and, like, back." Child agreed that she was talking about Appellant's "front private part" or "penis," and she clarified that her "front private part" meant vagina. Child agreed that "back private part" meant her "rear end" or "anus."

Appellant committed these acts "[m]ore than five times . . . [i]n the -- early in the morning or at night" while they were living in Marathon. Appellant also "put his front private part in [her] private part" and made Child "pull on his private part" on more than one occasion while they were living in Marfa. When Child pulled "front and back" on Appellant's "private part," "white stuff" would come out of it. Appellant also put his "front private part" in Child's mouth and made her "go forward and backwards," causing "white stuff [to] come out of it." Appellant also put his fingers in her "front private part." These acts occurred when Child was asleep, and sometimes Appellant kept his clothes on during the incidents. The final incident of abuse occurred "the day before [Appellant] went to jail."

Although Child was afraid of telling anybody about the abuse because Appellant told her that she would get into trouble if she did, Child eventually made an outcry of abuse to her teacher

because her teacher was concerned that Child was not acting like herself. Child also recalled describing the abuse to a CPS worker.

**C. Procedural history**

The State of Texas charged Appellant with continuous sexual abuse of a young child, alleging that Appellant committed multiple acts of sexual abuse against Child between September 1, 2018 and March 21, 2019. In addition to the evidence above, the State offered Barrientos's testimony as an expert witness regarding the nature of Child's injuries and whether her injuries could possibly be consistent with penetration in the manner alleged by Child. Following a *Daubert* hearing outside the jury's presence, the trial court allowed Barrientos to testify as an expert witness on those matters.[3]

Appellant testified in his case-in-chief, and denied penetrating Child, engaging in sexual touching with Child, and going into her room during the night while they were living in Marathon. The jury found Appellant guilty of continuous sexual abuse of a child, and the trial court assessed punishment of sixty years' imprisonment. This appeal followed. Appellant challenges his conviction in two issues, arguing that (1) the trial court abused its discretion by allowing Barrientos to testify as an expert witness, and (2) the evidence is insufficient to support his conviction based on Judge Newell's concurring opinion in *Ex parte Kelley*, No. WR-87,470-01, 2019 WL 5788034 (Tex. Crim. App. Nov. 6, 2019) (not designated for publication) (Newell, J., concurring). We address each issue in turn.

## II. EXPERT WITNESS

---

[3] *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

In his first issue, Appellant argues that the trial court abused its discretion by allowing Barrientos to testify as an expert witness under Texas Rule of Evidence 702 because Barrientos (1) lacked expert witness qualifications, (2) did not utilize reliable techniques, and (3) rendered an opinion that was not relevant to the issues in the case.

**A. Factual background**

At trial, the State announced its intent to offer Barrientos as an expert witness to testify about the findings from the SANE examination she performed on Child. During an admissibility hearing outside the jury's presence, Barrientos testified that she had been a registered nurse since 2016 and a certified SANE nurse in Texas since 2018. Barrientos received her registered-nurse degree from Texas Tech University Health Sciences Center in Odessa, Texas. Barrientos received specialized training in performing forensic examinations on sexual-assault victims, which included eighty hours of classroom training pertaining to adults and children. Barrientos had to perform eighteen SANE examinations with another SANE nurse before receiving her certification. Her training included performing physical examinations, including vaginal examinations. Barrientos recalled that several medical doctors supervised her well-child and vaginal examinations, but she could not testify regarding where they received their education or training. Barrientos could not recall the titles of her written training materials and did not bring any of the materials with her to court. Barrientos was also trained in providing courtroom testimony. At the time of trial, Barrientos's SANE nurse certification, which she was required to renew every two years, was current. Barrientos testified that she had gone through a peer-review process in which she conferred with a medical director and other SANE nurses. Barrientos had not attended any professional conferences for SANE nurses, but she had attended continuing-education courses as part of her license-renewal process and had read articles and watched approximately twenty hours

5

of training videos during the courses. At the time of trial, Barrientos had conducted approximately sixty-five SANE examinations (one to two per month on average), about half of which were on children. Barrientos had testified in court four times prior to this case. The State also presented Barrientos's curriculum vitae and a copy of her SANE nurse certificate of registration from the Office of the Attorney General of Texas. Regarding her methodology, Barrientos testified that she used the same basic process for every examination and tailored her examinations to specific patients' needs when necessary. This methodology was the same for all SANE examinations occurring in Texas.

At the conclusion of Barrientos's admissibility hearing testimony, the State argued that Barrientos was qualified to testify as an expert witness because she had performed a SANE examination on Child and had the appropriate certifications, training, and experience. Appellant responded "that she is not qualified to be an expert under the rules and [he] would ask her to not be certified" because Barrientos was unable to describe the training materials she used and had not brought them to court and because watching twenty hours of videos per year was insufficient training. Defense counsel did not object that Barrientos's opinion was unreliable or irrelevant. The trial court asked the prosecutor what issues he intended to elicit expert testimony from Barrientos on, and the prosecutor responded that he would limit Barrientos's expert testimony to (1) a medical description of the SANE examination performed on Child and (2) Barrientos's findings of injuries to Child's vagina that provided "some indication" of consistency with the Child's allegation of penile penetration by Appellant. The prosecutor acknowledged that Barrientos could not testify definitively about whether Appellant committed the alleged acts but only that Child's injuries were consistent with the allegations. The trial court overruled Appellant's objection and allowed Barrientos to testify before the jury as an expert witness on those matters.

6

During the State's case-in-chief, Barrientos testified that Child told her Appellant penetrated Child's vagina with his penis. Barrientos stated that she found no trauma on Child's labia majora and minora, but she found a small "notch" or "indentation" in her hymen and a scar on the lower portion of the vaginal entrance. Barrientos could not say with certainty when or how these injuries occurred, but she stated that based on what Child told her, Child's injuries could be consistent with penile penetration.

**B. Standard of review and applicable law**

A trial court's ruling on the admissibility of expert testimony is reviewed for an abuse of discretion. *See Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019). We do not disturb that ruling if it lies within the zone of reasonable disagreement. *Russeau v. State*, 291 S.W.3d 426, 438 (Tex. Crim. App. 2009). Stated otherwise, a trial court abuses its discretion when it acts unreasonably or arbitrarily without reference to any guiding rules or principles. *State v. Hill*, 499 S.W.3d 853, 865 (Tex. Crim. App. 2016).

For expert testimony, those guiding rules and principles are found in the Texas Rules of Evidence, including Rule 702, which provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." TEX. R. EVID. 702. Case law has clarified that for "expert testimony to be admissible under these rules, the proponent of the expert scientific evidence must demonstrate by clear and convincing evidence that the testimony is 'sufficiently reliable and relevant to help the jury in reaching accurate results.'" *Wolfe v. State*, 509 S.W.3d 325, 335–36 (Tex. Crim. App. 2017) (quoting *Kelly v. State*, 824 S.W.2d 568, 572 (Tex. Crim. App. 1992)). The proponent of expert testimony must demonstrate the following: (1) that

the expert is qualified; (2) that the testimony is based on a reliable scientific foundation; and (3) that the testimony is relevant to the issues in the case. *Id.* at 336; *Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006). These conditions are often called qualification, reliability, and relevance. *Vela*, 209 S.W.3d at 131.

The trial court serves as a gatekeeper and must decide preliminary challenges to witness qualifications and evidence admissibility. TEX. R. EVID. 104(a); *Vela*, 209 S.W.3d at 131. In discharging its gatekeeper role, the trial court is vested with the often-difficult task of determining what is irrelevant or likely to confuse the jury in its decision-making process. *See Coble v. State*, 330 S.W.3d 253, 272 (Tex. Crim. App. 2010). Nonetheless, the trial court's gatekeeping role "does not supplant cross-examination as 'the traditional and appropriate means of attacking shaky but admissible evidence.'" *Wolfe*, 509 S.W.3d at 336 (quoting *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 728 (Tex. 1998)).

**C. Analysis**

Appellant challenges Barrientos's qualifications to testify as an expert, the reliability of her testimony, and the relevance of her testimony to the issues in the case. We consider each challenge in turn.

*1. Barrientos was sufficiently qualified*

First, we determine whether Barrientos was sufficiently qualified to render an expert opinion.[4] *See Vela*, 209 S.W.3d at 131. A party offering expert testimony has the burden to show

---

[4] The State argues Appellant failed to preserve his argument that Barrientos was not qualified to testify as an expert witness. We disagree. Appellant specifically objected in the trial court that Barrientos was "not qualified to be an expert under the rules," and the trial court overruled his objection and allowed Barrientos to testify as an expert. Thus, Appellant has preserved this argument for our review. *See* TEX. R. APP. P. 33.1(a) (an appellate complaint must be preserved by a party's timely and specific objection at trial, as well as an express or implied ruling on the matter by the trial court).

the witness is qualified to testify on the matter in question. TEX. R EVID. 702; *Penry v. State*, 903 S.W.2d 715, 762 (Tex. Crim. App. 1995). The type of specialized knowledge that qualifies a witness to offer an expert opinion in a particular field may derive from a variety of sources, including the witness's "specialized education, practical experience, a study of technical works or a combination of these things." *Rhomer*, 569 S.W.3d at 669. In addition to having an acceptable background in a particular field, the trial court must determine that the witness's background is "tailored to the specific area of expertise in which the expert desires to testify." *Id. (*quoting *Vela*, 209 S.W.3d at 133). An expert witness is not required to always demonstrate formal training, and the expert may instead gain expertise in a particular field solely through their own personal experience or research. *See Morris v. State*, 361 S.W.3d 649, 656 (Tex. Crim. App. 2011).

To determine whether a trial court abused its discretion in ruling on an expert's qualifications, an appellate court may consider (1) how complex the field is, (2) how conclusive the expert's opinion is, and (3) how central the area of expertise is to the resolution of the case. *Rhomer*, 569 S.W.3d at 669–670 (citing *Rodgers v. State*, 205 S.W.3d 525, 528 (Tex. Crim. App. 2006)); *see also Vela*, 209 S.W.3d at 131. In general, greater qualifications are required for more complex fields of expertise and more conclusive and dispositive opinions. *Rhomer*, 569 S.W.3d at 669. However, in areas where the "expert evidence is close to the jury's common understanding, the witness's qualifications are less important than when the evidence is well outside the jury's own experience." *Rodgers*, 205 S.W.3d at 528.

Here, Barrientos testified that she had received a degree as a registered nurse in 2016 and had been a state-registered SANE nurse since 2018. To become a SANE nurse and maintain her registration, Barrientos had to undergo course work, perform eighteen SANE examinations under another SANE nurse's supervision, and participate in continuing-education courses. Barrientos

also participated in a peer-review process with similarly qualified colleagues to share experiences and learn from each other. At the time of trial, Barrientos had been a SANE nurse for approximately four years and had performed approximately sixty-five SANE examinations. As such, Barrientos's education, training, and experience were sufficiently tailored to her testimony regarding her SANE examination of Child. *See Maillart v. State*, No. 08-20-00232-CR, 2022 WL 970334, at *11–*12 (Tex. App.—El Paso Mar. 31, 2022, pet. ref'd) (not designated for publication) (holding that a psychologist with relevant education, training, and experience in the field of psychological therapy was qualified to testify in the area of therapy).

Barrientos's testimony regarding the injuries she found on Child's vagina, though of a medical nature and important to corroborate Child's accusations against Appellant, was not significantly complex or technical in nature. Moreover, Barrientos testified that she could not say with certainty the cause of Child's injuries but rather that Child's injuries could be consistent with penile penetration based on what Child had told her. Neither could Barrientos say with certainty when Child's injuries had been caused. Thus, Barrientos's opinion that Child's injuries were consistent with—but not definitive proof of—Appellant's alleged penetration of Child's vagina with his penis was not conclusive or dispositive. The trial court could have reasonably found that Barrientos's testimony was of diminished importance in resolving the case in light of the other evidence. *See id.* at 11 (stating that a therapist's opinions that were not dispositive or conclusive weighed in favor of the trial court's admission of his testimony as an expert).

For these reasons, we conclude that the record contains sufficient information for the trial court to have found Barrientos qualified to testify in the area of SANE examinations and the examination she performed on Child as well as render the provided opinion. *See Escamilla v. State*, 334 S.W.3d 263, 269 (Tex. App.—San Antonio 2010, pet. ref'd) (stating that a SANE nurse who

testified that she had conducted approximately one hundred SANE evaluations, underwent a peer-review process with other SANE nurses, and had received training through the Attorney General's Office was sufficiently qualified to testify regarding a SANE examination she performed on a child-victim).

*2. Appellant has not preserved his challenges to the reliability and relevance of Barrientos's testimony*

Next, we determine whether Barrientos's opinion was sufficiently reliable and relevant. *See Vela*, 209 S.W.3d at 131. Prior to addressing these contentions, we must determine whether Appellant preserved these arguments for our review. *See Mays v. State*, 285 S.W.3d 884, 889 (Tex. Crim. App. 2009) (error preservation is a threshold issue that a reviewing court must address, even if neither party raised the issue on appeal). An appellate complaint is properly preserved for our review by a party's timely and specific request, objection, or motion in the trial court. TEX. R. APP. P. 33.1(a). A party's failure to timely and specifically object results in forfeiture of the argument on appeal. *See id.*; *Henderson v. State*, No. 08-21-00174-CR, 2022 WL 3443699, at *5 (Tex. App.—El Paso Aug. 17, 2022, no pet.) (not designated for publication). To that end, "[a]n objection stating one legal basis may not be used to support a different legal theory on appeal." *Rezac v. State*, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990).

As stated above, Appellant specifically challenged Barrientos's qualifications as an expert witness, but he did not argue that her opinion was unreliable by attacking the scientific methodology underlying her opinion. Nor did Appellant argue that Barrientos's testimony would be irrelevant to the issues in the case. Because Appellant did not object or otherwise argue in the trial court that Barrientos's opinion was unreliable and irrelevant, Appellant has not preserved these arguments for appeal. *See* TEX. R. APP. P. 33.1(a); *see also Martinez v. State*, No. 08-17-

00165-CR, 2019 WL 4127261, at \*14 (Tex. App.—El Paso Aug. 30, 2019, no pet.) (not designated for publication) (recognizing that qualification, reliability, and relevance "raises distinct questions and issues, and an objection based on one requirement does not preserve error as to another.") (citing *Shaw v. State*, 329 S.W.3d 645, 655–56 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd)); *Urquhart v. State*, 128 S.W.3d 701, 706 (Tex. App.—El Paso 2003, pet. ref'd) (holding that a defendant's objection solely to the relevancy of an expert witness's testimony was insufficient to preserve for review the defendant's appellate argument that the expert's opinion was not reliable).

In sum, because Appellant has not shown that the trial court's decision to find Barrientos qualified was outside the zone of reasonable disagreement, and because he has not preserved his arguments that Barrientos's opinion was unreliable and irrelevant, we conclude that the trial court did not abuse its discretion by admitting her testimony as an expert witness.

**D. Any error was harmless**

Finally, even if the trial court abused its discretion by admitting Barrientos's expert testimony, any error would have been harmless. *See* TEX. R. APP. P. 44.2(b). In determining whether Appellant was harmed by the erroneous admission of evidence, we would consider the following: (1) the character of the alleged error and how it might be connected to other evidence; (2) the nature of the evidence supporting the verdict; (3) the existence and degree of additional evidence showing guilt; and (4) whether the State emphasized the complained-of error. *Maillart*, 2022 WL 970334, at \*17 (citing *Bagheri v. State*, 119 S.W.3d 755, 762–63 (Tex. Crim. App. 2003)).

As set forth above, other evidence besides Barrientos's testimony supported Appellant's conviction, including Child's testimony that Appellant repeatedly penetrated her vagina, anus, and

mouth with his penis and fingers as well as her descriptions of those acts. The State also presented Almance-Molinar's testimony that Child told her that Appellant penetrated her vagina with his penis. And although the prosecutor referred to Barrientos's testimony in passing during his closing argument, we cannot say that the State emphasized it. Accordingly, any purported error by admitting Barrientos's expert testimony on Child's SANE examination and her injuries would have been harmless. *See Escamilla*, 334 S.W.3d at 269 (holding that the trial court's error in designating a SANE nurse as an expert witness and receiving her testimony regarding a child-victim's injuries being consistent with sexual abuse was harmless because the State presented other evidence supporting the verdict, including the victim's testimony describing the offenses and her mother's testimony regarding her outcry of sexual abuse).

Accordingly, we overrule Appellant's first issue.

### III. SUFFICIENCY OF THE EVIDENCE

In his second issue, Appellant argues that the evidence is insufficient to support his conviction under Judge Newell's concurring opinion in *Ex parte Kelley*, 2019 WL 5788034, at *37–*38. Appellant contends that Judge Newell's concurrence "changed the way the courts should evaluate sufficiency [of the evidence] arguments in child sex cases" and that we should utilize that opinion in reviewing the sufficiency of the evidence supporting convictions in those types of cases.

Appellant's argument fails for two reasons. First, *Ex parte Kelley* is an unpublished opinion from the Texas Court of Criminal Appeals. Under the Rules of Appellate Procedure, unpublished opinions from that court cannot be cited as authority and have no precedential value; thus, Appellant's reliance on *Ex parte Kelley* is misplaced for this reason alone. *See* TEX. R. APP. P. 77.3 (stating that unpublished Court of Criminal Appeals decisions "have no precedential value and must not be cited as authority by counsel or by a court."). Second, the Court of Criminal Appeals

has repeatedly iterated that the *only* standard of review for the legal sufficiency of the evidence is the well-known *Jackson v. Virginia* standard. *See Jackson v. Virginia*, 443 U.S. 307, 315–16 (1979); *see also Carter v. State*, 620 S.W.3d 147, 149–50 (Tex. Crim. App. 2021) (applying the *Jackson v. Virginia* analysis for legal sufficiency post-*Ex parte Kelley*); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (establishing the legal sufficiency review under *Jackson v. Virginia* as the only standard of review of the evidence in criminal cases). Thus, Appellant's argument that the analysis promulgated in *Ex parte Kelley* has in any way supplanted or modified the *Jackson v. Virginia* analysis, including in child-sexual-abuse cases, must fail for this additional reason.

### A. Standard of review and applicable law

Although Appellant does not argue the correct standard in challenging the sufficiency of the evidence supporting his conviction, we will conduct a legal-sufficiency review of the evidence under the *Jackson v. Virginia* standard in the interest of justice. The Fourteenth Amendment's due process guarantee dictates that every conviction must be supported by legally sufficient evidence. *See Jackson*, 443 U.S. at 315–16; *Brooks*, 323 S.W.3d at 912. In a legal-sufficiency challenge, we focus solely on whether the evidence, when viewed in the light most favorable to the verdict, would permit *any* rational jury to find the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 318–19; *Brooks*, 323 S.W.3d at 912.

Applying that standard, we recognize that our system designates the jury as the sole arbiter of witness credibility and the weight attached to witness testimony. *Metcalf v. State*, 597 S.W.3d 847, 855 (Tex. Crim. App. 2020); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). Only the jury acts "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Clayton v. State*, 235 S.W.3d 772, 778

(Tex. Crim. App. 2007) (quoting *Jackson*, 443 U.S. at 319). In doing so, the jury may choose to believe or disbelieve any testimony. *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008). When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict and defer to that determination. *Dobbs*, 434 S.W.3d at 170 (citing *Jackson*, 443 U.S. at 319). In conducting a legal-sufficiency review, "[w]e are not to sit as a thirteenth juror reweighing the evidence or deciding whether we believe the evidence established the element in contention beyond a reasonable doubt[.]" *Blankenship v. State*, 780 S.W.2d 198, 207 (Tex. Crim. App. 1988). Instead, "we test the evidence to see if it is at least conclusive enough for a reasonable factfinder to believe based on the evidence that the element is established beyond a reasonable doubt." *Id.* (quoting *Jackson*, 443 U.S. at 318).

Here, Appellant challenges his conviction for continuous sexual abuse of a young child. As it pertains to this case, a person commits that offense if (1) during a period of thirty days or more in duration, the person commits two or more acts of sexual abuse and (2) at the time of the commission of the acts, the actor is seventeen years of age or older and the victim is a child younger than fourteen years of age. TEX. PENAL CODE ANN. § 21.02(b)(1)–(2). "If a jury is the trier of fact, members of the jury are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed. The jury must agree unanimously that the defendant, during a period that is 30 or more days in duration, committed two or more acts of sexual abuse." *Id.* § 21.02(d).

An "act of sexual abuse" means any act that is a violation of several different sexual offenses, including aggravated sexual assault and indecency with a child by contact. *Id.* § 21.02(c)(2), (c)(4). A person commits aggravated sexual assault if he intentionally or knowingly causes the penetration of the anus or sexual organ of a child by any means, or if he causes the

15

penetration of the mouth of a child by the person's sexual organ. *Id.* § 22.021(a)(1)(B)(i), (ii). As it pertains to the offense of continuous sexual abuse of a young child, a person commits indecency with a child if the person engages in sexual contact with the child or causes the child to engage in sexual contact other than by the touching of the child's breast. *Id.* §§ 21.02(c)(2), 21.11(a)(1). Relevant here, "sexual contact" means the following, if done with the intent to arouse or gratify the sexual desire of any person: any touching by a person, including touching through clothing, of the anus or genitals of a child and any touching of any part of the body of a child, including touching through clothing, with the genitals of a person. *Id.* § 21.11(c).

**B. Legally sufficient evidence supports Appellant's conviction**

On appeal, Appellant does not specifically challenge the sufficiency of the evidence supporting any particular element of the offense. Even so, our review of the record shows that the evidence, viewed in the light most favorable to the verdict, is legally sufficient to support each element of the charged offense. Child identified Appellant in the courtroom and testified that he was the person who sexually abused her. According to Child, Appellant began sexually abusing her when she was six or seven years old while she and Appellant lived in Marfa. The abuse continued after they moved to Marathon in October 2018, with the final act of abuse occurring the night before Appellant was arrested in March 2019. Although Child did not testify regarding the specific dates on which the abuse took place, the evidence supports a finding that the acts of sexual abuse occurred over a period of thirty days or longer. *See Kappes v. State*, No. 08-22-00095-CR, 2023 WL 1972015, at *4 (Tex. App.—El Paso Feb. 13, 2023, no pet.h.) (holding that a child's testimony that sexual abuse occurred on many occasions when she was different ages but did not include specific dates that sexual abuse took place was nonetheless sufficient to establish thirty-day requirement of the continuous-sexual-abuse offense, reasoning that the offense was created in

16

response to young children who could not identify the exact dates of the offenses) (citations omitted).

Regarding the nature of the abusive acts, Child testified that Appellant repeatedly penetrated her vagina, anus, and mouth with his penis, and that on at least one occasion he penetrated her vagina with his fingers. When Appellant orally penetrated Child, "white stuff" would come out of his "private part." These acts constitute aggravated sexual assault of a child. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i), (ii). Child also agreed that on at least one occasion, Appellant caused Child's hand to contact his penis and forced her to "pull it front and back" on his "private part," causing "[w]hite stuff" to come out of it; this act constitutes indecency with a child by contact. *See id.* § 21.11(a)(1), (c)(2). Barrientos also testified that she observed injuries to Child's vagina during the SANE examination that were consistent with penile penetration and that Child told her that Appellant touched her vagina, anus and rectum, and that he penetrated her vagina and anus with his penis. And Almance-Molinar, a CPS worker, also testified that Child told her that Appellant had penetrated her vagina with his penis.

Appellant argues that inconsistencies in Child's testimony and other evidence, including his own testimony denying that the abuse took place, undermine confidence in the jury's verdict. But under the correct standard of review, we cannot substitute our judgment of the evidence for that of the jury's or reweigh the evidence, and we presume that the jury resolved these conflicts in favor of the verdict and defer to their determination. *See Clayton*, 235 S.W.3d at 778; *Blankenship*, 780 S.W.2d at 207.

Given this evidence, any rational jury could have found each of the elements of the charged offense beyond a reasonable doubt, and we conclude that legally sufficient evidence supports Appellant's conviction for continuous sexual abuse of a young child.

17

Accordingly, we overrule Appellant's second issue.

## IV. CERTIFICATION OF RIGHT TO APPEAL

We note that the trial court has certified Appellant's right to appeal in this case, but the certification does not bear Appellant's signature indicating that he has been informed of his rights to appeal and to file a pro se petition for discretionary review with the Texas Court of Criminal Appeals. *See* TEX. R. APP. P. 25.2(d). We thus find that the certification is defective and that neither Appellant's attorney nor the trial court has corrected the defect.

The Court ORDERS Appellant's attorney, pursuant to Rule 48.4, to send Appellant a copy of this opinion and this Court's judgment, to notify Appellant of his right to file a pro se petition for discretionary review, and to inform Appellant of the applicable deadlines. *See* TEX. R. APP. P. 48.4, 68. The Court further ORDERS Appellant's attorney to comply with all the requirements of Rule 48.4. *See* TEX. R. APP. P. 48.4.

## V. CONCLUSION

We affirm the judgment supporting Appellant's conviction.

LISA J. SOTO, Justice

March 30, 2023

Before Rodriguez, C.J., Palafox, and Soto, JJ.

(Do Not Publish)

18