

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | | |
|---|---|---|---|
| GREGORY PARRIS, | § | No. 08-22-00138-CR | |
| | Appellant, | § | Appeal from the |
| v. | | § | 277th Judicial District Court |
| THE STATE OF TEXAS, | | § | of Williamson County, Texas |
| | Appellee. | § | (Trial Court Nos. 19-0962-K277; 19-0974-K277) |

**O P I N I O N**

We withdraw our opinion and judgment of March 30, 2023, and substitute the following opinion. Appellant's motion for rehearing is denied.

A jury convicted Appellant Gregory Parris of assault causing bodily injury and official oppression.[1] Appellant challenges his convictions in one issue, arguing that the trial court abused its discretion by admitting video recordings containing statements from a witness who did not testify at trial, thus violating his rights under the Confrontation Clause. For the following reasons, we affirm the convictions.[2]

---

[1] Upon Appellant's motion, this appeal was consolidated with Appellant's separate appeal in Cause Number 08-22-00140-CR, which was dismissed due to consolidation.

[2] This case was transferred from our sister court in Austin, and we decide it in accordance with the precedent of that court to the extent required by TEX. R. APP. P. 41.3.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual background

Appellant was a police officer employed by the Hutto Police Department. At the time of the offenses, Appellant was a patrol officer assigned to the night shift and had been with the department for less than a year. On May 31, 2018, Appellant was working the night shift with Officer Jamie Alcocer and two other officers. At 10:09 p.m., Appellant and Officer Alcocer were dispatched to a location in Hutto, Texas, in reference to a complaint regarding the odor of marijuana coming from the garage of a house. While driving to the reported house, Appellant pulled over and spoke with a man wearing a law-enforcement uniform who told Appellant that he was unaware of anybody in the neighborhood who was smoking marijuana in their house.

Appellant and Officer Alcocer parked their vehicles on a side street and walked up to the suspected house. Officer Alcocer recalled that she saw a white male, later identified as Jeremy Rogers, who was standing behind a truck parked in the driveway of the house. Appellant and Officer Alcocer approached Rogers, and Appellant told Rogers that they had received a call about the odor of marijuana coming from a house. Rogers told the officers that he did not live at the house and asked if they wanted to call his friend who was inside the house. Appellant told Rogers to put down the cell phone he was holding and place his hands on the truck. Rogers replied, "For what," and Appellant replied, "Because I'm telling you to," and began frisking Rogers. Rogers asked what he had done wrong, and Appellant grabbed him by the belt line and pushed him toward the truck. Rogers asked why he was being searched, and Officer Alcocer stated that Rogers was "drinking in public." Rogers asserted that he was not in a public place. Appellant told Rogers that he smelled like weed and alcohol. While Appellant frisked Rogers, he asked if Rogers had any weapons on his person, to which Rogers replied he did not.

2

Appellant next asked Rogers if he had any identification, and Rogers pulled out his wallet and began searching for identification. Apparently unable to find anything, Rogers put his wallet back in his pocket, and Appellant asked Rogers for his wallet. Rogers refused and asked what probable cause he had to demand his wallet, and Appellant threatened to arrest Rogers for public intoxication. When Rogers stated that he "did not step out of the boundaries—,"Appellant grabbed Rogers by the neck and Rogers raised his arms and pushed back against Appellant. Appellant then struck Rogers in the face with his fist, knocking him down and causing the back of his head to hit the bumper of the truck. Appellant told Rogers, "Don't fucking push on me," shoved Rogers to the ground, and twice punched Rogers in the face and ordered him to turn over and stop resisting them. Rogers began screaming, asked the officers what he had done, and told the officers that he was not fighting them. Appellant then deployed a taser on Rogers twice and handcuffed him. In addition to the taser prongs stuck in his back and blunt trauma caused by a punch, Rogers's ear was split and bleeding during the incident. After Appellant arrested Rogers, he was treated at a hospital for his injuries and received stitches.[3]

### B. Procedural history

The State charged Appellant with assault causing bodily injury and official oppression. *See* TEX. PENAL CODE ANN. §§ 22.01(a), 39.03(a). At trial, the State offered three video recordings into evidence that were marked as State's Exhibits 3, 4, and 5. State's Exhibit 3 is the dashcam recording from Appellant's patrol vehicle that contained Appellant's conversation with the unknown law-enforcement officer; State's Exhibit 4 is the video recording of the incident from Officer Alcocer's bodycam; and State's Exhibit 5 is the recording of the incident from Appellant's

---

[3] Rogers was subsequently charged with resisting arrest, public intoxication, and assault on a public servant, which seem to have been later dismissed.

bodycam. Appellant objected to the admission of the recordings because they contained Rogers's out-of-court statements and the parties anticipated Rogers would invoke his Fifth-Amendment rights, thus precluding Appellant's ability to confront Rogers and violating Appellant's Confrontation-Clause rights. After discussion between the trial court and the parties that we recount below, the court ultimately overruled Appellant's Confrontation-Clause objection and admitted the recordings.

The jury convicted Appellant of both charged offenses and sentenced him to 365 days in jail. The trial court suspended Appellant's sentences and placed him on community supervision for one year, with each sentence running concurrently. This appeal followed.

Appellant raises one issue challenging his convictions. He argues the trial court abused its discretion by admitting the aforementioned video recordings containing Rogers's and other witnesses' out-of-court statements over his Confrontation-Clause and hearsay objections.[4] Prior to discussing the merits of Appellant's bases for objection, we discuss whether he preserved these claims.

## II. INVITED ERROR

Prior to discussing the merits of Appellant's arguments, we address the State's contention that Appellant waived his complaint under the doctrine of invited error. "The doctrine of invited error estops a party from asking for something, getting what it asked for, and then complaining about the outcome. The doctrine applies when the complaining party was the 'moving factor' in creating the purported error it complains about." *Ramjattansingh v. State*, 548 S.W.3d 540, 550

---

[4] Although Appellant argues that the trial court erred by admitting statements from other witnesses within the recordings, he does not raise specific arguments addressing who made these statements, what the statements consisted of, or how the trial court erred by admitting those statements. Thus, we focus solely on the propriety of admitting Rogers's statements.

4

(Tex. Crim. App. 2018) (citation omitted); *Prystash v. State*, 3 S.W.3d 522, 531 (Tex. Crim. App. 1999) (en banc) ("If a party affirmatively seeks action by the trial court, that party cannot later contend that the action was error.") (citation omitted).

Here, the trial court and the parties engaged in extensive discussion regarding the admission of the video recordings and concerns about possible violations of the Confrontation Clause under *Crawford v. Washington*.[5] The parties initially discussed whether Rogers would be testifying for the State since he could invoke his Fifth Amendment right to avoid self-incrimination. The prosecutor stated that he would likely not call Rogers to testify. The trial court expressed its concerns that the recordings contained Rogers's statements and that he would be unavailable to testify, thus implicating the Confrontation Clause's operation. Defense counsel argued that Rogers's statements within the recordings were inadmissible under the Confrontation Clause because they were testimonial in nature. After discussing the facts of the case, defense counsel argued that Rogers's initial statements to Appellant and Officer Alcocer were testimonial but conceded that with regard to his statements during the assault, there "would be a great argument that it would not be testimonial." The prosecutor responded that Rogers's statements as a whole were nontestimonial and were admissible.

The trial court stated that it was considering excluding all of the audio from the recordings then decided to watch one of the videos to decide. After the trial court viewed State's Exhibit 4, it decided to admit the videos, seeing most of Rogers's speech as nontestimonial, although it expressed concerns that Rogers's initial statements before the altercation were testimonial and

---

[5] 541 U.S. 36, 59 (2004). Under *Crawford*, "a testimonial hearsay statement may be admitted in evidence against a defendant 'only where the declarant is unavailable, and only where the defendant has a prior opportunity to cross-examine [the declarant].'" *De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008) (quoting *Crawford*, 541 U.S. at 59).

decided to let the video in "and perhaps some of the audio, but it's going to need to be redacted[.]" Defense counsel then stated that Rogers's statements after the assault were testimonial and inadmissible. The trial court and parties then discussed the possibility of redacting certain statements from the recordings.

After discussing other matters, the trial court suggested that the State call Officer Alcocer and present her testimony while the State's technical staff were redacting the audio from the recordings. The trial court then suggested that "the cleanest way to do this is not put in any audio because [Appellant] can't cross-examine [Rogers]." The court further stated that it believed Rogers's initial conversation with Appellant and Officer Alcocer was inadmissible because those statements were testimonial. Defense counsel stated that he wanted Rogers's statements admitted if he could cross-examine Rogers about the statements. After the State discussed Rogers's initial statements in the recordings, the following dialogue occurred:

> THE COURT: Right. I don't think it's testimonial,[6] which means I do think it comes in, but then I think actually you probably want the beginning part in. I mean, that's up to you.
>
> DEFENSE COUNSEL: We're objecting to the entire--
>
> THE COURT: I know. I know. But if I'm going to let some of it in, do you want it all in?
>
> DEFENSE COUNSEL: Yes.
>
> THE COURT: Okay.
>
> DEFENSE COUNSEL: But we're not waiving our objection for appeal.
>
> THE COURT: Absolutely not.

---

[6] Here, the court was referring to the pre-altercation portion of the discussion regarding the point at which Parris requests Rogers's wallet and then demands it.

The court then asked defense counsel if he had any additional objections to the recordings, and defense counsel said that he did not and confirmed that he was objecting to the video footage in its entirety. The trial court informed the parties that she confirmed with Rogers's attorney he would not be testifying on any matter and would be invoking his Fifth Amendment right to avoid self-incrimination. Following this conversation, the State offered State's Exhibits 3, 4, and 5, and the trial court admitted them over Appellant's "prior objections made outside the jury's presence."

On appeal, the State argues that Appellant waived his Confrontation-Clause complaint as to Rogers's post-assault statements because after the trial court stated that it was prepared to exclude Rogers's statements during the initial portion of the interaction, defense counsel requested the trial court to admit the statements. We agree. Appellant objected to the admission of the recording and has thus avoided procedural default and preserved his Confrontation-Clause complaint under the error-preservation rule set forth in TEX. R. APP. P. 33.1(a). *See* TEX. R. APP. P. 33.1(a) (to preserve an issue for appellate review, a party must timely and specifically object to a trial court's proposed action and obtain a ruling on the objection). Nonetheless, defense counsel explicitly informed the trial court that he wanted the entirety of Rogers's statements to be admitted, even though the trial court had ruled that only a portion of his statements were nontestimonial and that the court was prepared to exclude the testimonial statements. Although he rejects the notion that he waived his complaint because of the trial court's decision to partially overrule his Confrontation-Clause objection, Appellant acknowledges that defense counsel had a choice in the matter and that he made this decision to request admission of all of the statements based on "strategy and anticipated application of evidentiary rules."

We acknowledge that defense counsel, faced with the potential of having only a portion of the recording admitted, made a strategic decision to request the trial court to admit the entirety of

7

the recording under the rule of optional completeness. *See* TEX. R. EVID. 106, 107. Even so, the record indicates that the trial court specifically asked defense counsel whether he wanted the entirety of the recording admitted, and when he answered in the affirmative, the trial court did what he asked. Because Appellant was the "moving factor" in the admission of Rogers's statements made after the initial interaction and assault, he cannot now complain on appeal that the trial court erred by admitting Rogers's later statements when Appellant was the party that requested their admission. Thus, his complaint as to the admission of Rogers's statements following the assault is waived. *See Ramjattansingh*, 548 S.W.3d at 550; *Prystash*, 3 S.W.3d at 531; *see also Moye v. State*, No. 08-00-00368-CR, 2002 WL 90454, at *5 (Tex. App.—El Paso Jan. 24, 2002, pet. ref'd) (not designated for publication) (holding that under the doctrine of invited error, a defendant who requested the admission of evidence could not complain about its admission on appeal).

## III.  CONFRONTATION CLAUSE

We next discuss whether the admission of Rogers's statements prior to and during the assault violated the Confrontation Clause. Assuming, without deciding, that the trial court erred in admitting these statements, we conclude that any error did not result in reversible harm. Errors of a constitutional dimension, including violations of the Confrontation Clause, are reviewed under Rule 44.2(a) of the Rules of Appellate Procedure. *See Langham v. State*, 305 S.W.3d 568, 582 (Tex. Crim. App. 2010). Under Rule 44.2(a), "If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." TEX. R. APP. P. 44.2(a). The Court

8

of Criminal Appeals has further clarified the proper harm analysis for Confrontation-Clause violations under *Crawford*:

> In determining specifically whether constitutional error under *Crawford* may be declared harmless beyond a reasonable doubt . . . the following factors are relevant: (1) how important was the out-of-court statement to the State's case; (2) whether the out-of-court statement was cumulative of other evidence; (3) the presence or absence of evidence corroborating or contradicting the out-of-court statement on material points; and (4) the overall strength of the prosecution's case . . . . [T]he emphasis of a harm analysis pursuant to Rule 44.2(a) should not be on "the propriety of the outcome of the trial." That is to say, the question for the reviewing court is not whether the jury verdict was supported by the evidence. Instead, the question is the likelihood that the constitutional error was actually a contributing factor in the jury's deliberations in arriving at that verdict—whether, in other words, the error adversely affected the integrity of the process leading to the conviction. In reaching that decision, the reviewing court may also consider, in addition to the factors listed above, *inter alia,* the source and nature of the error, to what extent, if any, it was emphasized by the State, and how weighty the jury may have found the erroneously admitted evidence to be compared to the balance of the evidence with respect to the element or defensive issue to which it is relevant. With these considerations in mind, the reviewing court must ask itself whether there is a reasonable possibility that the *Crawford* error moved the jury from a state of non-persuasion to one of persuasion on a particular issue. Ultimately, after considering these various factors, the reviewing court must be able to declare itself satisfied, to a level of confidence beyond a reasonable doubt, that the error did not contribute to the conviction before it can affirm it.

*Langham*, 305 S.W.3d at 582.

Upon review, we conclude beyond a reasonable doubt that any error in admitting Rogers's statements in the recordings did not contribute to Appellant's conviction. Rogers's statements to Appellant and Officer Alcocer constituted a greeting; an admission that he had been consuming alcohol; several assertions that he was not drinking alcohol in a public place; his questions about whether the officers had probable cause to frisk him or demand to search his wallet; his statement that he had been previously arrested for an alcohol-related offense; and his refusal to hand over his wallet to Appellant after he told Appellant that he could not locate any identifying information. Much of parties' trial strategies focused on the lawfulness of his attempts to search and seize

Rogers and the reasonableness of his use of force against Rogers, and both parties presented testimony from use-of-force experts on that issue. Appellant also asserted that his actions were in self-defense and the jury was charged on that issue. Thus, although Rogers's statements regarding whether the officers had "probable cause" had some bearing on whether Appellant's actions were reasonable, the statements were not the only evidence the State relied upon in establishing the unreasonableness of Appellant's actions.

Other evidence tended to establish the same facts Rogers asserted in the recordings. After she listened to the recordings in the courtroom, Officer Alcocer confirmed that Rogers asked Appellant "For what?" when Appellant asked him to put his cell phone down and place his hands on the truck and that he denied having any weapons or identification on his person. Officer Alcocer also testified that Rogers asked Appellant whether he had probable cause to demand his wallet. Thus, the complained-of statements were cumulative of Officer Alcocer's confirmation that Rogers made the statements, and her testimony likewise tended to corroborate Rogers' statements.

Finally, the State's case was strong due to the nontestimonial aspects of the video recordings that show Appellant using a significant amount of force against Rogers during the assault, including punching him multiple times and causing Rogers's head to strike the bumper of the truck, and tasing him twice while he was on the ground. These actions caused Rogers to sustain injuries that required treatment at a hospital, including the splitting of his ear. The State also presented testimony from a Texas Ranger who opined that based on his knowledge of police training standards and relevant constitutional and statutory laws, Appellant's actions were inconsistent with those standards and laws. The State also presented testimony from a use-of-force expert who testified that after reviewing the recordings and Appellant's report and affidavit describing the incident, Appellant used unreasonable excessive force and his actions were

10

inconsistent with statutory and constitutional laws and the various use-of-force models utilized by law-enforcement agencies in Texas.

After balancing the factors set forth in *Langham*, we conclude beyond a reasonable doubt that any error in admitting Rogers's statements within the recordings did not contribute to his conviction or punishment or move the jury from a state of non-persuasion to persuasion regarding Appellant's guilt for the charged offenses. *See* TEX. R. APP. P. 44.2(a); *Langham*, 305 S.W.3d at 582.

Accordingly, we overrule this part of Appellant's sole issue.

## IV. HEARSAY

Finally, we determine whether the trial court abused its discretion by admitting the recordings because they contained Rogers's inadmissible hearsay statements. Prior to addressing this contention, we must determine whether Appellant preserved this complaint for our review. *See Mays v. State*, 285 S.W.3d 884, 889 (Tex. Crim. App. 2009) (error preservation is a threshold issue that a reviewing court must address). An appellate complaint is properly preserved for our review by a party's timely and specific request, objection, or motion in the trial court. TEX. R. APP. P. 33.1(a). A party's failure to timely and specifically object results in forfeiture of the argument on appeal. *See id.*; *Henderson v. State*, No. 08-21-00174-CR, 20223443699, at *5 (Tex. App.—El Paso Aug. 17, 2022, no pet.) (not designated for publication). "An objection stating one legal basis may not be used to support a different legal theory on appeal." *Rezac v. State*, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990) (en banc). To that end, "a Confrontation Clause objection generally does not preserve for appeal a complaint that the trial court erred in admitting hearsay." *Murray v. State*, 597 S.W.3d 964, 972–73 (Tex. App.—Austin 2020, pet. ref'd).

Here, the State contends that Appellant waived his complaint because he did not object to the admission of Rogers's statements because they were inadmissible hearsay, an argument to which Appellant does not respond in his briefing. Although both the prosecutor and the trial court discussed the applicability of the hearsay rule to the statements, the record does not contain any specific hearsay objection on Appellant's part. Thus, Appellant has not preserved this claim for our review and his argument is waived. *See* Tex. R. App. P. 33.1(a); *Murray*, 597 S.W.3d at 972–73 (holding that a defendant who objected to the admission of evidence based on a Confrontation-Clause violation but did not make a separate hearsay objection failed to preserve his hearsay claim for appellate review).

Accordingly, we overrule the remaining part of Appellant's sole issue.

## V. CONCLUSION

We affirm the judgments supporting Appellant's convictions.


LISA J. SOTO, Justice

May 9, 2023

Before Rodriguez, C.J., Palafox, and Soto, JJ.

(Do Not Publish)